IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS, an unincorporated labor organization; FIREPAC, a political action committee; IAFF LOCAL 1437; CRAIG CORUM; IAFF LOCAL 2644; BILL BARNETT; AMERICAN FEDERATION OF TEACHERS LOCAL 2115; AMERICAN FEDERATION OF TEACHERS LOCAL 2143; AMERICAN FEDERATION OF TEACHERS LOCAL 4866; AMERICAN FEDERATION OF TEACHERS LOCAL 6248; THOMAS D. JOHNSON; and CYNTHIA R. LEE, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | **CIVIL ACTION NO.** |
| vs. | ) ) ) | |
| ROBERT BENTLEY, in his capacity as Governor of the State of Alabama and President of the State Board of Education; LUTHER STRANGE, in his capacity as Attorney General of the State of Alabama; JOSEPH B. MORTON, in his capacity as the Superintendent of Education of the State of Alabama; FREIDA HILL, in her capacity as Chancellor of Postsecondary Education of the State of Alabama; THOMAS L. WHITE, JR., in his capacity of Comptroller of the State of Alabama; DAVID PERRY, in his capacity as the Director of the Alabama Department of Finance; DON STANFORD, in his capacity as Mayor of the City of Decatur; BILLY JACKSON, ROGER ANDERS, GARY HAMMON, RONNY RUSSELL, and GREG REEVES, in their capacities as members of the Decatur City Council; KENNETH SMITH, in his capacity as Director of the City of Decatur Personnel | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Department; MAX A. TOWNSON, in his          )
capacity as Mayor of the City of            )
Cullman; ANDY PAGE, GARLAN E.               )
GRUDGER, JR., JOHN W. COOK,                  )
CLINT HOLLINGSWORTH, and JENNY              )
FOLSOM, in their capacities as              )
members of the Cullman City Council;        )
BILL MANGUM, in his capacity as Civil       )
Service Director of the City of Cullman     )
Personnel Department; C. WILSON             )
BLAYLOCK, in his capacity as District       )
Attorney for Cullman County; and            )
SCOTT ANDERSON, in his capacity as          )
District Attorney for Morgan County,

        Defendants.

1.      The plaintiffs bring this action against the defendants due to the unlawful

deprivation of the plaintiffs' rights and privileges secured by the U.S. Constitution.

Specifically, the plaintiffs challenge the constitutionality of Alabama Act No. 2010-761,

which amends Alabama Code § 17-17-5, as infringing on plaintiffs' rights to free speech,

free association, equal protection of the laws, and due process of law, in violation of the

First and Fourteenth Amendments to the United States Constitution.  The plaintiffs seek

declaratory, injunctive, and other relief under 28 U.S.C. §§ 2201 and 2202 and 42

U.S.C. §1983, et. seq.


## JURISDICTION AND VENUE

2.      Jurisdiction of this action is conferred on this Court by 28 U.S.C. §1331,

28 U.S.C. §1337, 28 U.S.C. §1343, and 42 U.S.C. §1983.  Venue lies within this district

pursuant to 28 U.S.C. §1391.


## PARTIES

3.      Plaintiff International Association of Fire Fighters ("IAFF") is an

2

unincorporated labor organization with its offices and principal place of business in Washington, D.C. The IAFF is a membership organization with more than 290,000 professional fire fighters, paramedics, and EMTs employed by public and private sector employers in the United States and Canada. Inclusive of this is more than 3,350 members employed in the State of Alabama.

4.    Plaintiff FIREPAC is a political action committee registered with the Alabama Secretary of State, and is associated with the IAFF.

5.    Plaintiff Local 1437 is a local union affiliate of the IAFF, with its principal place of business in Decatur, Alabama. Consistent with the IAFF's policy and pursuant to the IAFF's Constitution, Local 1437 is an autonomous, self-governing separately chartered organization.

6.    Plaintiff Craig Corum is a fire fighter employed by the City of Decatur, Alabama, and is a member of the IAFF and Local 1437. For several years, Plaintiff Craig Corum has paid IAFF and Local 1437 membership dues though voluntary payroll deductions administered by the City of Decatur because it is the most convenient and efficient way to make these voluntary payments. Included as part of Plaintiff Corum's membership dues is a contribution to FIREPAC. Plaintiff Corum wishes to continue to pay his membership dues and make voluntary contributions to FIREPAC, but fears prosecution if, after the Act becomes effective, he continues to pay for his membership dues, inclusive of contributions to FIREPAC, by means of payroll deduction or otherwise.

7.    Plaintiff Local 2644 is a local union affiliate of the IAFF, with its principal place of business in Cullman, Alabama. Consistent with the IAFF's policy and pursuant to the IAFF's Constitution, Local 2644 is an autonomous, self-governing separately chartered organization.

8.    Plaintiff Bill Barnett is a fire fighter employed by the City of Cullman, Alabama, and is a member of the IAFF and IAFF Local 2644. For several years,

3

plaintiff Bill Barnett has paid his IAFF and Local 2644 membership dues by means of payroll deductions administered by the City of Cullman because it is the most convenient and efficient way to make these voluntary payments. Included as part of Plaintiff Barnett's membership dues is a contribution to FIREPAC. Plaintiff Barnett wishes to continue to pay his membership dues and make voluntary contributions to FIREPAC, but fears prosecution if, after the Act becomes effective, he continues to pay for his membership dues, inclusive of contributions to FIREPAC, by means of payroll deduction or otherwise.

9.  Plaintiff American Federation of Teachers Local 2143 is a local union affiliate of the American Federation of Teachers ("AFT"), with its principal place of business in Jefferson County, Alabama. Consistent with the AFT's policy and pursuant to the AFT's Constitution, Local 2143 is an autonomous, self-governing separately chartered organization.

10. Plaintiff Local 2115 is a local union affiliate of the AFT, with its principal place of business in Birmingham, Alabama. Consistent with the AFT's policy and pursuant to the AFT's Constitution, Local 2115 is an autonomous, self-governing separately chartered organization.

11. Plaintiff Local 4866 is a local union affiliate of the AFT, with its principal place of business in Montgomery, Alabama. Consistent with the AFT's policy and pursuant to the AFT's Constitution, Local 4866 is an autonomous, self-governing separately chartered organization.

12. Plaintiff Local 6248 is a local union affiliate of the AFT, with its principal place of business in Mobile, Alabama. Consistent with the AFT's policy and pursuant to the AFT's Constitution, Local 6248 is an autonomous, self-governing separately chartered organization.

13. Plaintiff Thomas D. Johnson is a teacher who resides in Cullman, Alabama and is employed by the Jefferson County School System in Birmingham,

Alabama. Plaintiff Johnson is a member of Local 2143 and for several years he has paid his Local 2143 membership dues by means of payroll deductions administered by the Jefferson County Board of Education because it is the most convenient and efficient way to make these voluntary payments. Plaintiff Johnson wishes to continue to pay his membership dues, but fears prosecutions if, after the Act becomes effective, he continues to pay for his membership dues by means of payroll deduction or otherwise.

14.    Plaintiff Cynthia R. Lee is a teacher who resides in Cullman, Alabama and is employed by the Birmingham City School System in Birmingham, Alabama. Plaintiff Lee is a member of Local 2115 and for several years she has paid her Local 2115 membership dues by means of payroll deductions administered by the Birmingham City Board of Education because it is the most convenient and efficient way to make these voluntary payments. Plaintiff Lee wishes to continue to pay her membership dues, but fears prosecutions if, after the Act becomes effective, she continues to pay for her membership dues by means of payroll deduction or otherwise.

15.    Defendant Robert Bentley is the Governor of the State of Alabama. In that capacity defendant Bentley exercises "supreme executive authority," and "must take care that the laws be faithfully executed." Alabama Constitution Art. 5, §§ 113, 120. Thus defendant Bentley has the duty to implement and enforce the Act. Defendant Bentley, by virtue of his position as Governor, also serves as President of the State Board of Education and is responsible for the control and supervision of public schools in the state of Alabama. Alabama Constitution Art. XIV, § 262, Ala. Code § 16-3-11. Defendant Bentley is sued in his official capacity.

16.    Defendant Luther Strange is the Attorney General of the State of Alabama. As the Attorney General, Mr. Strange has the ultimate authority to enforce Alabama's criminal laws and to direct local District Attorneys in their prosecutions of criminal actions. Ala. Code §§ 36-15-1, 36-15-14, and 36-15-15. Defendant Strange is sued in his official capacity.

17.    Defendant Joseph B. Morton is the Superintendent of Education of the State of Alabama. In that capacity, Dr. Morton is responsible for explaining the meaning and intent of public school laws, deciding controversies and disputes involving the proper administration and operation of the public school system in the State of Alabama, and reviewing the actions and orders of local boards of education and local school superintendents in matters relating to finance. Ala. Code §§ 16-4-4, 16-4-8. In that capacity, Dr. Morton sough guidance from Mr. Strange on the implementation and enforcement of Alabama Act No. 2010-761 and, based on that guidance, directed local school superintendents to "take the necessary steps to end the deduction of membership dues after issuing the February [2011] paychecks." Dr. Morton, therefore, has a key role in implementing and enforcing the payroll deduction prohibitions and restrictions of Alabama Act No. 2010-761. Dr. Morton is sued in his official capacity.

18.    Defendant Freida Hill is the Chancellor of Postsecondary Education of the State of Alabama. In that capacity, Ms. Hill directs and supervises the administration and operation of the Alabama Community College System, including the administration of pay deductions for Alabama Community College employees. Ms. Hill, therefore, has a key role in implementing and enforcing the payroll deduction prohibitions and restrictions of Alabama Act No. 2010-761. Ms. Hill is sued in her official capacity.

19.    Defendant Thomas L. White, Jr. is the Comptroller of the State of Alabama. In that capacity, Mr. White directs, supervises, and controls the Alabama Department of Finance's Division of Control and Accounts, which is responsible for maintaining all books, records, and accounts relating to the State of Alabama's government finances, as well as controlling and recording all payments into and out of the Alabama State treasury and each special fund and account therein. Ala. Code §§ 41-4-50, 41-4-51. Mr. White is responsible for the administration of deductions from state employees' pay and, therefore, has a key role in implementing and enforcing the payroll deduction prohibitions and restrictions of Alabama Act No. 2010-761. Mr. White

6

is sued in his official capacity.

20.    Defendant David Perry is the Director of Finance of the State of Alabama. In that capacity, Mr. Perry is Alabama's chief financial officer, and is responsible for the administration and operation of the Department of Finance. Mr. Perry is responsible for statewide policies governing deductions from state employees' pay and, therefore, has a key role in implementing and enforcing the payroll deduction prohibitions and restrictions of Alabama Act No. 2010-761. Mr. Perry is sued in his official capacity.

21.    Defendants John W. Cook, Jenny Folsom, Garlan Grudger, Jr., Clint Hollingsworth, and Andy Page comprise the Cullman City Council, which possesses legislative and other powers, including the power to enact rules, regulations, and ordinances regarding employees' compensation and benefits, including the deduction of labor association dues from employees' pay. Ala. Code § 11-43-43. The City Council is ultimately responsible for the administration of deductions from City of Cullman employees' pay and, therefore, has a key role in implementing and enforcing the payroll deduction prohibitions and restrictions of Alabama Act No. 2010-761. Defendants Cook, Folsom, Grudger, Hollingsworth, and Page are sued in their official capacities as members of the Cullman City Council.

22.    Defendant Max A. Townson is the Mayor of the City of Cullman. As Mayor, Mr. Townson is responsible for implementing the ordinances, rules, and regulations of the Cullman City Council, including those concerning employees' compensation and benefits. Ala. Code §§ 11-43-80, 11-43-81. Mr. Townson is responsible for the administration of deductions from City of Cullman employees' pay and, therefore, has a key role in implementing and enforcing the payroll deduction prohibitions and restrictions of Alabama Act No. 2010-761. Defendant Townson is sued in his official capacity.

23.    Defendant Bill Mangum is the Civil Service Director of the City of Cullman's Personnel Department. Mr. Mangum is responsible for ensuring the City's

employees are compensated in accordance with the City Council's ordinances, rules, and regulations concerning employees' compensation and benefits. Mr. Mangum is responsible for the administration of deductions from City of Cullman employees' pay and, therefore, has a key role in implementing and enforcing the payroll deduction prohibitions and restrictions of Alabama Act No. 2010-761. Defendant Mangum is sued in his official capacity.

24.    Defendant C. Wilson Baylock is the District Attorney for Cullman County, in which the City of Cullman is located. Mr. Baylock is responsible for enforcing all of the criminal laws of the State of Alabama, and prosecuting all indictable offenses in the criminal courts. Ala. Code § 12-17-184. Mr. Baylock is sued in his official capacity.

25.    Defendants Roger Anders, Gary Hammon, Billy Jackson, Greg Reeves, and Ronny Russell comprise the Decatur City Council, which possesses legislative and other powers, including the power to enact rules, regulations, and ordinances regarding employees' compensation and benefits, including the deduction of labor association dues from employees' pay. Ala. Code § 11-43-43; Decatur Code of Ordinances § 2-25. The Decatur City Council is ultimately responsible for the administration of deductions from City of Decatur employees' pay and, therefore, has a key role in implementing and enforcing the payroll deduction prohibitions and restrictions of Alabama Act No. 2010-761. Defendants Anders, Hammon, Jackson, Reeves, and Russell are sued in their official capacities as members of the Decatur City Council.

26.    Defendant Don Stanford is Mayor of the City of Decatur. As Mayor, Mr. Stanford is responsible for implementing the ordinances, rules, and regulations of the Decatur City Council, including those concerning employees' compensation and benefits. Ala. Code §§ 11-43-80, 11-43-81; Decatur Code of Ordinances § 2-51. Mr. Stanford is responsible for the administration of deductions from City of Decatur employees' pay and, therefore, has a key role in implementing and enforcing the payroll deduction prohibitions and restrictions of Alabama Act No. 2010-761. Defendant

8

Stanford is sued in his official capacity.

27.    Defendant Kenneth Smith is the Director of the City of Decatur's Personnel Department. Mr. Smith is responsible for ensuring the City's employees are compensated in accordance with the City Council's ordinances, rules, and regulations concerning employees' compensation and benefits. Mr. Smith is responsible for the administration of deductions from City of Decatur employees' pay and, therefore, has a key role in implementing and enforcing the payroll deduction prohibitions and restrictions of Alabama Act No. 2010-761. Defendant Smith is sued in his official capacity.

28.    Defendant Scott Anderson is the District Attorney for Morgan County, in which the City of Decatur is located. Mr. Anderson is responsible for enforcing all of the criminal laws of the State of Alabama, and prosecuting all indictable offenses in the criminal courts. Ala. Code § 12-17-184. Mr. Anderson is sued in his official capacity.

<u>COMMON ALLEGATIONS</u>

**PAYROLL DEDUCTION OF MEMBERSHIP DUES AND
PAC CONTRIBUTIONS PRIOR TO THE ACT**

29.    The IAFF's mission includes protecting the safety and health, and improving the working conditions, of fire fighters and emergency medical services employees through better legislation, grass roots lobbying, collective bargaining, and other appropriate means. In support of this mission, IAFF engages in numerous activities, many of which can be considered to be "political activity" as that term is used in the Act, including advocating on matters of public concern, such as: the provision of fire and emergency medical services; fire and emergency medical employees' health and safety concerns; health and safety concerns for the public relating to fire safety, prevention, and protection; first responder education, training, and certification issues;

tax and budgetary issues; and salary, insurance, and pension benefits for fire and emergency medical employees serving the public.

30.    To advance its mission, the IAFF has sponsored FIREPAC as a vehicle for members who wish to support candidates whose positions are consistent with IAFF's mission and goals.  Voluntary contributions to FIREPAC provide contributing members an opportunity to participate in the electoral process and to support and elect candidates of their choice.  Contributions to FIREPAC are included as part of the IAFF membership dues.  In addition, some IAFF members in Alabama make an additional voluntary FIREPAC contribution by means of a separate payroll deduction.

31.    IAFF Local 1437 represents members of the City of Decatur, Alabama Fire Department, and shares the mission of the IAFF as set forth in paragraph 29, above.

32.    IAFF Local 2644 represents members of the City of Cullman, Alabama Fire Department, and shares the mission of the IAFF as set forth in paragraph 29, above.

33.    IAFF Locals 1427 and 2644 and their members participate in FIREPAC as an important avenue for participating in the political process and to support candidates who support the mission of the IAFF and its Local affiliates.

34.    The AFT's mission is to improve standards for education, healthcare, state, and local employees and bring them into relations of mutual assistance and cooperation, obtain collective bargaining and other rights, eliminate discrimination, promote democracy, provide training and education on topics of community interest, ensure safe air quality in schools, improve school facilities through community initiatives, and secure services for children in need.  In support of this mission, AFT

engages in numerous activities, many of which can be considered to be "political activity" as that term is used in the Act, including education and training of its members, endorsing political candidates, making political contributions, publishing news articles and other literature about political candidates and/or ballot issues, political polling, lobbying, phone banking, and working election polls.

35.    AFT Locals 2115, 2143, 4866, and 6248 share the mission of the AFT as set forth in paragraph 34 above.

36.    To advance its mission, the AFT has sponsored the Committee On Public Education ("COPE"), a political action committee registered with the Federal Election Commission, associated with the AFT and in which AFT Local affiliates participate. COPE is a vehicle for members who wish to support candidates whose positions are consistent with AFT's mission and goals.  Voluntary contributions to COPE are made by Alabama AFT affiliate members through payroll deduction and forwarded to COPE. COPE contributions provide contributing members an opportunity to participate in the electoral process and to support and elect candidates of their choice. The COPE fund is governed by federal law.

37.    AFT Locals 2115, 2143, 4866, and 6248 and their members participate in COPE as an important avenue for participating in the political process and to support candidates who support the mission of the AFT and its Local affiliates.

38.    Alabama Code § 36-1-4.2 mandates, in relevant part, that "every political subdivision of this state which employs full-time firefighters shall adopt policies or regulations which will provide for deductions from the salaries of its firefighters or groups of firefighters whenever a written request for such deductions is submitted to the

11

governing body of the (employer) political subdivision. ... Such deductions may be made for, but not limited to, tax sheltered annuities, membership dues, the Public Employees' Individual Retirement Account Fund, voluntary contributions and group insurance premiums. Deductions for membership dues shall be made based upon membership lists and forms provided by the employees' organization."

39.     Alabama Code § 16-22-6 mandates, in relevant part, "[e]ach local board of education and certain postsecondary institutions shall adopt policies and regulations which will provide for deductions from salaries of its employees whenever a request is presented to the board or postsecondary institution by the employees or groups." Such deductions may be made for, but not limited to, savings plans, tax sheltered annuities, membership dues, the Public Employees' Individual Retirement Account Fund, voluntary contributions, and group insurance premiums. Deductions for membership dues and voluntary contributions shall be made based upon membership lists and forms provided by the employees' organization."

40.     State and local officials have long honored and implemented employee requests for the payment of membership dues to employee membership organizations such as the IAFF, its Local affiliates, and AFT's Local affiliates such as Locals 2115, 2143, 4866, and 6248 and for the payment of voluntary contributions to political action committees associated with employee organizations such as FIREPAC and COPE.

41.     Both the City of Decatur, Alabama and the City of Cullman, Alabama have implemented employee requests for payment of employees' IAFF and IAFF Local Union dues and for the payment of voluntary contributions to political action committees associated with employee organizations such as FIREPAC.

12

42.    The Jefferson County, Alabama Board of Education, Alabama Department of Postsecondary Education, City of Birmingham, Alabama Board of Education, and City of Mobile, Alabama Board of Education have implemented employee requests for payment of employees' AFT Local Union dues and for the payment of voluntary contributions to political action committees associated with employee organizations such as COPE.

43.    That practice neither resulted, nor was perceived to result, in governmental involvement in political activities, and the practice neither constituted nor was perceived as constituting governmental support for any political point of view.

44.    The political viewpoints and candidates that have been supported by the plaintiffs have frequently been ones that leading Republican political figures in Alabama have opposed.

45.    On June 28, 2010 — two days after then-Governor Riley made negative statements about the participation of public employee unions in the Republican primary — Alabama Comptroller Thomas White announced to all state departments, agencies and personnel offices that, "Payroll deductions for Political Action Committees (PACs) will no longer be withheld from employee's pay effective July 1, 2010." Comptroller White subsequently amended the Fiscal Policy and Procedures Manual—which had expressly authorized payroll deductions for PAC contributions—to omit any mention of PACs as recipients of voluntary contributions.  The Comptroller purported to have come to the view that, even though such requests had been honored and effectuated for decades, longstanding statutory authority—in particular, the provision of Alabama Code § 17-17-5 prohibiting public employees from "us[ing] any state, county, or city funds,

13

property, or time, for any political activities"—made it unlawful for the State to comply with such payroll deduction requests.

46.     In a subsequent press release, then-Governor Riley explained that the Comptroller's actions regarding payroll deduction were due to his administration, stating that "the Riley administration stopped payroll deductions...."

47.     Commenting on the Comptroller's actions, the editorial board of the *Birmingham News* reported that "Riley is . . . on the warpath against state employees' groups." Birmingham News Editorial Board, "Our View:  Riley's Administration Ends State Employees' Payroll Deductions for Political Purposes," *Birmingham News* (Sept. 6, 2010), available at http://blog.al.com/birmingham-news-commentary/2010/09/our_view_rileys_administration.html.

48.     On November 2, 2010 the voters of Alabama elected a state legislature that is, for the first time in more than a century, controlled by members of the Republican Party.  The new Republican majority consists almost of exclusively of legislators that the plaintiffs either failed to support or actively opposed during the 2010 election campaign.

49.     The members of the legislature elected on November 2, 2010 took office the following day, but were not scheduled to meet in a regular legislative session until March 2011, after the end of then-Governor Riley's second and final term of office on January 17, 2011.

50.     On December 1, 2010, then-Governor Riley took the extraordinary step of calling a special session of the newly elected legislature in order to retaliate against such public employee unions and their members due to their exercise of their First

Amendment rights to participate in the political process, including the rights to freedom of speech and association.

51.     Specifically, then-Governor Riley proposed an amendment to Alabama Code § 17-17-5 to prohibit payroll deductions for contributions to PACs such as COPE and plaintiff FIREPAC and to effectively prohibit public employee dues deductions for membership organization such as plaintiffs IAFF, its Local affiliates, and the AFT Local affiliates.

52.     On December 10, 2010, Senator Marsh introduced in the Alabama Senate a bill to prohibit public employees from "arrang[ing] by salary deduction or otherwise" for the payment of "dues for any membership organization which engages, directly or indirectly, in political activity" as well as to prohibit public employees from "arrang[ing] by salary deduction or otherwise" for the payment of PAC contributions.

53.     During the debate over the proposed legislation, both the Senate and the House defeated amendments that would have permitted payroll deductions if the organization collecting the contributions paid the full administrative costs of administering such deductions.

54.     State and/or local governmental entities in Alabama belong to membership organizations such as the Alabama League of Municipalities ("ALM") and the Alabama Association of School Boards ("AASB"), which engage in activities that are "political" within the meaning of the Act.  State and/or local governmental entities use public funds to pay their membership dues to such organizations.

55.     At the behest of ALM and AASB, the legislature preserved the ability of government entities to use public funds to pay dues to organizations like ALM and

AASB to be used for political activity, even as it was prohibiting the use by employees of payroll deductions to pay membership dues to public employees organizations like IAFF and AFT Local affiliates. This was accomplished by amending the proposed legislation so that payroll deduction of membership dues would only be prohibited as to "dues of any person . . . employed" by a government entity.

56.     On December 15, 2010, the legislation, as amended, passed the House by a margin of three votes and passed the Senate by a margin of ten votes. Then-Governor Riley signed the bill on December 20, 2010. Alabama Laws 1st Sp. Sess. Act 2010-761 (S.B. 2).

57.     The Act drastically amended Alabama Code § 17-17-5 to effectively prohibit public employee dues deductions for labor organizations and related political action committees.

58.     The Act carries forward the original prohibition against the use of public resources for "political activities" stated in the first sentence of § 17-17-5, with some minor amendments, into a new subsection (a), and adds a new, far-reaching subsection (b) to the statute. The remaining sentences of the old § 17-17-5 are included in a new subsection (c).

59.     The first sentence of the new subsection (b) provides that:

> No person in the employment of the State of Alabama, a county, a city, a local school board, or any other governmental agency may arrange by salary deduction or otherwise for any payments to a political action committee or arrange by salary deduction or otherwise for any payments for the dues of any person so employed to a membership organization which uses any portion of the dues for political activity. [Act 2010-761 § 1 (to be codified at Ala. Code § 17-17-5(b))]

16

60.     The Act's new subsection (b) defines "political activity," for the purpose of this subsection only, as:

> (1) Making contributions to or contacting with any entity which engages in any form of political communication, including communications which mention the name of a political candidate.
> (2) Engaging in or paying for public opinion polling.
> (3) Engaging in or paying for any form of political communication, including communications which mention the name of a political candidate.
> (4) Engaging in or paying for any type of political advertising in any medium.
> (5) Phone calling for any political purpose.
> (6) Distributing political literature of any type.
> (7) Providing any type of in-kind help or support to or for a political candidate. [Act 2010-761 § 1 (to be codified at Ala. Code § 17-17-5(b))]

61.     No provision in the Act—and no provision elsewhere in the Alabama Code—defines the term "political" or the key concepts in the definition: "political communication," "public opinion," "political advertising," "political purpose," or "political literature."

62.     The Act's new subsection (b) goes on to prescribe the process that a membership organization must undergo in order to qualify for payroll deduction of membership dues:

> Any organization that requests the State of Alabama, a county, a city, a local school board, or any other governmental agency to arrange by salary deduction or otherwise for the collection of membership dues of persons employed by the State of Alabama, a county, a city, a local school board, or any other governmental agency shall certify to the appropriate governmental entity that none of the membership dues will be used for political activity.  Thereafter, at the conclusion of each calendar year, each organization that has arranged for the collection of its membership dues of persons employed by the State of Alabama, a county, a city, a local school board, or any other governmental agency shall provide the appropriate governmental entity a detailed breakdown of the expenditure of the membership dues of persons employed by the State of Alabama, a county, a city, a local school

board, or any other governmental agency collected by the governmental entity. [Act 2010-761 § 1 (to be codified at Ala. Code § 17-17-5(b))]

63.     The Act's new subsection (b) further provides:

> Any organization that fails to provide the required certifications that reports any expenditures for political activity or that files false information about political activity in any of its reports shall be permanently barred from arranging for the collection of its membership dues by any governmental entity.  The Examiners of Public Accounts shall annually review a sample of at least ten percent of the certifications filed with each governmental entity and report its findings to the appropriate governmental entity. [Act 2010-761 § 1 (to be codified at Ala. Code § 17-17-5(b))]

64.     The Act's new subsection (c), *inter alia*, carries forward the criminal penalties set forth in the original law:  "Any person who violates this section shall be guilty of the crime of trading in public office and upon conviction thereof, shall be fined or sentenced, or both, as provided by Section 13A-10-63." Act 2010-761 § 1 (to be codified at Ala. Code § 17-17-5(b)).  Section 13A-10-63, in turn, provides that "trading in public office" is a Class A misdemeanor, which means a violation is punishable by imprisonment for up to one year and a fine of up to $6,000.00.  *See* Ala. Code §§ 13A-5-7, 13A-5-12.

65.     Alabama public employers have set up payroll deduction systems for a variety of purposes—e.g., withholding income and payroll taxes, allowing employees to pay their insurance premiums and make retirement contributions, and allowing employees to contribute to charities.  The marginal cost of administering additional payroll deductions for membership dues and voluntary PAC contributions is *de minimis*.

66.     The Act permits state and/or local government entities in Alabama to continue allowing their employees to make contributions through payroll deduction to

charitable organizations, mutual insurance companies, and credit unions, which are membership organizations and which engage in activities that are "political" as that term is used in the Act.

67.    Unless enjoined by this Court, the Act will prohibit any state or local government employee—on pain of criminal sanctions—from "arrang[ing]," by payroll deduction or otherwise, for the payment of any contributions to a PAC, or for the payment of membership dues to any public employee organization, such as IAFF, its Local affiliates, and the AFT Local affiliates, if the organization uses "any portion of the dues," however small, for any "political activity" as broadly and vaguely defined in the Act.  [Act 2010-761 § 1 (to be codified at Ala. Code § 17-17-5(b) and (c)).]

68.    The Act conditions the collection of payroll-deducted membership dues for a public employee organization such as plaintiffs upon the organization's acceptance of far-reaching restrictions on its speech regarding elections, candidates, and issues. Such an organization cannot use "any portion" of the dues so collected for any "political activity" as broadly and vaguely defined in the Act.

69.    The Act further infringes upon the free speech and association rights of plaintiffs by requiring that, in order to qualify for dues deductions, a public employee organization must submit a certification to the public employer that it will use no dues collected through payroll deduction for any "political activity" and must, at the end of the year, submit a "detailed breakdown of its dues expenditures"—thus opening its financial records and books to the employer to demonstrate that it complied with the certification and the Act's prohibitions.

19

70.    The Act apparently delegates to officials from the various public employers throughout the state—as well as the Examiners of Public Accounts—the role of determining what does and does not constitute "political activity."

71.    The Act's broad definition of "political activity" is vague.  The definition lists seven types of activity that qualify as "political"—but the types of activity listed are themselves vaguely worded and in almost all cases rely, in a circular fashion, on the adjective "political."  Neither the legislation, nor any other provision of Alabama Code, defines the word "political" or any of the key concepts within the statute:  "political communication," "public opinion polling," "political advertising," "political purpose," "and "political literature."

72.    Accordingly, it is unclear whether the definition extends to pure issue advocacy as well as to communications relating to the election or defeat of candidates for office.  It also is unclear whether a public employee organization is disqualified from receiving dues deductions if it conducts a poll purely on issues rather than candidates in an election and, as well, whether such disqualification would follow from a purely internal poll of members rather than a poll of the general public.  The vague and open-ended nature of the term "political activity" and its definition leaves public employee organizations with no clear guidance as to how they might conduct their affairs so as to make the required certifications and "detailed breakdown[s]" of expenditures in order to retain payroll deductions.

73.    The Act's prohibition prevents payroll deduction for membership dues for any public employee organization unless the organization has certified that *no* portion of those dues — however small that portion may be — will be used for "political activity,"

20

and even if the organization would pay for any costs associated with the use of payroll deduction. No legitimate government interest is served by that broad prohibition:

74. Public employee organizations collect dues to engage in a variety of activities, not just activities that are "political," and a governmental agency could not reasonably be regarded as involving itself in political activity, or as providing support for any political point of view, merely by allowing payroll deduction of dues without insisting on a certificate that the organization will not use any portion of its dues for "political activity." And even if a legitimate interest could be hypothesized, the prohibition has no rational, let alone substantial, relationship to any such interest.

75. Nor is any legitimate government interest served by the Act's further intrusive requirement that an organization that receives payroll deduction for membership dues must not only certify that it will comply with the Act in advance, but also affirmatively prove its compliance at the end of each year by providing a "detailed breakdown" of its expenditures. And even if a legitimate interest in imposing these conditions could be hypothesized, the conditions have no rational, let alone substantial relationship to such an interest.

76. The Act states that "[n]o person in the employment of the State of Alabama, a county, a city, a local school board, or any other government agency may arrange by salary deduction *or otherwise* for any payments to a political action committee or arrange by salary deduction *or otherwise* for any payments for the dues of any person so employed to a membership organization which uses any portion of the dues for political activity" (emphasis supplied). Nothing in the Act explicitly explains or limits the meaning of "or otherwise."

21

77.     The plaintiffs IAFF, its Local affiliates, and the AFT Local affiliates have historically collected membership dues and voluntary PAC contributions from their members through payroll deduction.

78.     If the plaintiffs IAFF, its Local affiliates, and the AFT Local affiliates are unable to collect membership dues through payroll deduction, they will suffer significant reductions in dues revenue.  Similarly, if COPE and plaintiff FIREPAC are unable to collect voluntary contributions from through payroll deduction, they will also suffer significant reductions in voluntary member contributions.

79.     To the extent that the language of the Act making it unlawful to arrange "by payroll deduction or *otherwise*" for payment of membership dues or PAC contributions may be understood to prohibit public employees from paying membership dues to plaintiffs IAFF, its Local affiliates, and the AFT Local affiliates, and making voluntary contributions to COPE and plaintiff FIREPAC, they will suffer significant reductions in dues revenue and voluntary member contributions.

80.     Nothing in the Act prevents government bodies from using public funds to pay dues to membership organizations that are composed of government bodies rather than individual employees, such as the ALM and the AASB, even though those organizations engage in activity that is "political" within the meaning of the Act.  Indeed, the Act was tailored specifically to exclude such organizations from its coverage.

81.     Nothing in the Act prevents public employers from processing payroll deductions for employee payments to other membership organizations—such as charities, mutual insurance companies, and credit unions—that are not "dues," even

though such organizations engage in activity that is "political" within the meaning of the Act.

## COUNT I

### THE ACT VIOLATES PLAINTIFFS' CONSTITUTIONAL
### RIGHTS TO FREE SPEECH AND FREE ASSOCIATION

82.     Paragraphs 1 through 81 above are re-alleged as if set out fully herein.

83.     The First Amendment of the United States Constitution, made applicable to the States by the Fourteenth Amendment, provides that the government "shall make no law ... abridging the freedom of speech, or the right of the people peaceably to assemble."

84.     The Act prohibits payroll deductions for membership organizations that spend any membership dues or voluntary contributions for "political activity," but permits payments to other types of organizations or for other purposes.  This distinction is based on viewpoint discrimination, specifically antipathy toward the political activities of public employee membership organizations and related political action committees, including plaintiffs IAFF, its Local affiliates, the AFT Local affiliates, and FIREPAC.

85.     There is no rational basis for the view that, simply by permitting public employees like the individual plaintiffs, to voluntarily utilize payroll deductions for payment of the employees' voluntary dues payments to membership organizations that use any part of such dues for 'political activity,' or for voluntary contributions to a political action committee, that government employers could reasonably be perceived as supporting the political objectives of such public employee organizations or political action committees.

86.    That the Act has the purpose and effect to interfere with and discriminate against public employees' political speech and associational activities is further evidenced by the fact that the Act's limitations apply only to individual employee dues or political action committee contributions, but does not in any way limit public entities from making dues payments or membership fees to membership organizations, even though such public entity contributions are paid from public tax revenue. Nor does the Act limit the use of payroll deductions to other membership organizations, such as charities, banks, credit unions, or insurance companies.

87.    The purpose and effect of the Act's provisions is to severely restrict the ability of public employee organizations and related political action committees, including plaintiffs IAFF, its Local affiliates, the AFT Local affiliates, and FIREPAC to engage in a broad range of political speech and associational activities, while placing no similar limitations whatsoever on membership organizations, such as charities, insurance companies, banks, and credit unions.

88.    Making political contributions and expenditures constitutes speech for purposes of the First Amendment.  Therefore, by discriminatorily interfering with and prohibiting public employers from allowing salary deductions for voluntary contributions to a political action committee or for dues in a membership organization which engages directly or indirectly in political activity, the Act unlawfully restricts the plaintiffs' rights of free speech and free association in violation of the rights guaranteed by the First Amendment.

## COUNT II

**THE ACT DIFFERENTIATES BASED ON VIEWPOINT AND**

**DENIES PLAINTIFFS EQUAL PROTECTION OF THE LAWS**

89.    Paragraphs 1 through 88 are re-alleged as if set out fully herein.

90.    Section 1 of the Fourteenth Amendment of the United States Constitution forbids a State from "deny[ing] to any person within its jurisdiction the equal protection of laws."

91.    The Act was drafted and introduced because "certain state employee organizations utilize state resources to collect money from their members for the express purpose of influencing political elections." Governor's Official Fact Sheet: Anti-Corruption Reform Package, Restricting Political Activity on State Time.

92.    The Act, therefore, has been tailored to reach dues to membership organizations paid by public employees, and *not* dues paid to membership organizations comprising public entities, which also use their membership dues for political activities.

93.    The Act does not prohibit the use of payroll deductions to other membership organizations such as charities, credit unions, insurance companies, which may also engage in "political activity."

94.    The Act does not prohibit membership organizations that engage in "political activity" from utilizing other public resources – such as meeting rooms – for non-political purposes. Those membership organizations benefit from using public resources, but are not required to engage in the year-end certification, and intrusion into financial records, demanded here. Further, membership organizations who mis-use

25

public resources for "political activity" do not suffer a permanent ban from using public resources in the future.

95.    Public employees, like the individual plaintiffs, and their labor organizations and political action committees are, therefore, singled out for disparate treatment specifically aimed at limiting such public employees, like the individual plaintiffs, and their public employee organizations political speech.

96.    The Act's differential treatment of public employees and public employee organizations, as detailed above, violates the equal protection clause of the Fourteenth Amendment of the United States Constitution, as this differential treatment is not justified by legitimate, important *or* compelling state interests.

**COUNT III**

**THE ACT IS VAGUE AND OVERBROAD AND**

**DENIES PLAINTIFFS DUE PROCESS OF LAW**

97.    Paragraphs 1 through 96 are re-alleged as if set out fully herein.

98.    The Act imposes criminal sanctions for public employees who "arrange by salary deduction or otherwise" for payments to a political action committee or to a membership organization which uses any portion of the dues for "political activity." Alabama Act No. 2010-761 at Section 1.

99.    The Act also requires a government to permanently bar the collection of voluntary political action committee contributions or dues for any membership organization that does use dues for "political activity."

100.    The Act's definition of "political activity," utilizing circular terms such as "political communication," "political advertising," "political purpose," and "political

26

literature" is unconstitutionally vague and overly broad because the term "political" itself may be read to apply to matters relating to the election or defeat of a particular candidate, but to other matters, such as the conduct of the government, government policy impacting public employees, or administration of governmental policy.

101.   The terms "political communication," "political advertising," "political purpose," and "political literature" are likewise unconstitutionally vague and overly broad because they may apply to *any* communication concerning public policy issues – such as the application of National Fire Protection Association standards which involve the protection, safety, health and well-being of fire fighters who are members of plaintiffs IAFF Local 1437 and Local 2644, such as the individual plaintiffs Craig Corum and Billy Barnett and such as The No Child Left Behind Act , which affects the educational goals and performance standards of teachers who are members of AFT Locals 2115 and 2143, like plaintiffs Thomas Johnson and Cynthia Lee.

102.   Likewise, the Act includes "making contributions to or contracting with any entity that engages in any for of political communication, including communications which mention the name of a political candidate" which may be read to include subscribing to periodicals that discuss policy issues, or contributing to media outlets that discuss policy issues.

103.   By encompassing in the definition "including communications which mention the name of a political candidate," the Act may be read that *any* communication that mentions the name of a political candidate constitutes "political activity," whether that communication concerns election or defeat of a candidate, important safety and

health concerns impacting public employees or the public as a whole, fiscal policy, or is simply a discussion of the important issues of the day.

104.    The vagueness of the term "political activity," therefore, provides insufficient guidance for entities or individual public employees, such as the plaintiffs as to what acts or activities are prohibited, and what are not, and may be interpreted in a manner  that effectively prohibits such public employees and public employee organizations from engaging in any 'political activity,' whatsoever

105.    The fact that the Act appears to permit various prosecutors and public employers throughout the State — as well as the state Examiners of Public Accounts — to apply this vague language, further subjects public employees and public employee organizations, such as the plaintiffs, to arbitrary, inconsistent, and discriminatory enforcement.

106.    Finally, the Act prohibits public employees from paying membership dues and making political action committee contributions by salary deduction or *otherwise*, without limitation.  This use of the incredibly broad and vague term "or otherwise" may be read to prohibit public employees like the individual plaintiffs—on the pain of criminal penalties—from paying dues to membership organizations or contributing to political action committees *at all*.  The breadth of the Act appears limitless in its intrusion and interference with the First Amendment and the Fourteenth Amendment rights of the plaintiff public employees and public employee organizations.

107.    The Act is therefore void for both vagueness and overbreadth.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiffs respectfully pray that this Court:

    a.  Enter a declaratory judgment that the Act violates the rights of plaintiffs under the First and Fourteenth Amendments;

    b.  Enjoin defendants, their agents, successors, and anyone acting in concert or participation with them, at their direction, or under their control, from enforcing or implementing the Act;

    c.  Award plaintiffs' attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

    d.  Award such other and further relief as this Court deems just and proper.

Dated: March 23, 2011                    Respectfully Submitted,


Robert M. Weaver
QUINN, WALLS, WEAVER, DAVIES LLP
rweaver@qwwdlaw.com
Leslie J. Horton
hortonlaw@gmail.com
2700 Highway 280 East
Suite 380
Birmingham, AL  35223
Phone (205) 870-9989
Fax     (205) 803-4143


Thomas A. Woodley
taw@wmlaborlaw.com
Douglas L. Steele
dls@wmlaborlaw.com
Megan K. Mechak
mkm@wmlaborlaw.com
WOODLEY & McGILLIVARY
1101 Vermont Avenue, Suite 1000
Washington, DC 20005
Phone: (202) 833-8855
Fax: (202) 452-1090


David J. Strom
dstrom@aft.org
AMERICAN FEDERATION OF TEACHERS
555 New Jersey Avenue, N.W.
Washington, DC  20001
Phone: (202) 393-7474
Fax: (202) 393-6385

*Counsel for Plaintiffs*

29